# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-20562

United States Court of Appeals
Fifth Circuit

**FILED**
August 21, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

SEALED SEARCH WARRANTS,

Defendants,

JUSTIN SMITH,

Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY and ELROD, Circuit Judges, and RODRIGUEZ,* District Judge.

XAVIER RODRIGUEZ, District Judge:

On the basis of sealed probable cause affidavits, the Government obtained and executed three pre-indictment search warrants of Appellant Justin Smith's home, business, and storage unit in March and April of 2016. Smith filed motions in the district court seeking to unseal the affidavits supporting these warrants. The Magistrate Judge initially granted the

---

* District Judge of the Western District of Texas, sitting by designation.

No. 16-20562

motion in part, requiring the Government to submit proposed redacted versions of the affidavits to be unsealed. The Government objected but complied. The Magistrate Judge found that the Government redacted too much from the affidavits and submitted its own redacted versions that would be unsealed after fourteen days if the Government did not object. The Government brought its objections to the district court, which reversed the Magistrate Judge because unsealing the affidavits would compromise the Government's ongoing investigation. Smith appealed. He still has not been indicted.

Because the district court failed to specify its factual findings with requisite detail in the context of the required balancing test, the judgment of the district court is VACATED and REMANDED for further findings on the decision to leave the affidavits under seal.

**BACKGROUND**

The background of this appeal is almost entirely procedural. By his appeal, Appellant Justin Smith challenges the district court's denial of his motions to unseal the probable cause affidavits supporting three pre-indictment search warrants.

Over several weeks in March and April 2016, as part of a criminal tax investigation, IRS agents obtained and executed three search warrants at properties related to Smith—the first at the commercial airplane hangar of his business, the second at his home, and the third at his storage unit. Relying on Federal Rule of Criminal Procedure 41, Smith filed three separate motions shortly after each warrant was executed, primarily seeking to unseal the probable cause affidavits supporting the warrants. On April 20, 2016, the motions were consolidated before the Magistrate Judge who issued the first of the three warrants.

No. 16-20562

On May 20, 2016, the Magistrate Judge issued a Memorandum, Recommendation and Order, granting Smith's motions in part and partially unsealing the affidavits while allowing the Government to redact certain information that would readily identify witnesses and other confidential sources. The Government, indicating that it planned to object to the Magistrate Judge's order, sought to stay the order and later asked for reconsideration. The Magistrate Judge denied both requests and ordered the Government to file proposed redacted versions of the affidavits under seal, along with supplemental briefing, by June 10. The Government complied.

On July 18, the Magistrate Judge issued a Memorandum and Order in which she found the Government's redactions too extensive. The Magistrate Judge issued her own redacted versions of the affidavits, to remain under seal for fourteen days to allow the Government to object. On July 29, the Government objected to the Magistrate Judge's May 20 and July 18 decisions.

On August 17, the district court sustained the Government's objections and reversed the Magistrate Judge, ordering that the affidavits remain fully sealed during the pendency of the Government's investigation. The district court focused on the existence of a common law right of access to documents. Amidst a circuit split on the precise scope of that right, the district court was "reticent to create such a right, absent Fifth Circuit guidance." The district court, condoning the views of the Ninth Circuit, expressed hesitation over creating such a right where it could impede pre-indictment investigations and require a wasteful line-by-line review of affidavits by a magistrate judge.

Smith filed a timely notice of appeal of the district court's order.

No. 16-20562

## DISCUSSION

This Court first assesses the Government's argument that there is no jurisdiction to hear this appeal. After concluding it has jurisdiction, the Court turns to the merits of Smith's appeal by first determining the legal standard that applies to an individual's request for pre-indictment search warrant materials under the common law right of access, and then assessing whether the district court properly applied this test. The Court concludes that such requests for access must be assessed on a case-by-case basis by balancing the public's right of access with interests favoring nondisclosure and that the judgment of the district court must be vacated and remanded for further factual findings in the context of this balancing test.

## I.    This Court has jurisdiction.

The Government argues that there is no jurisdiction under 28 U.S.C. § 1291, which gives circuit courts jurisdiction over "appeals from all final decisions of the district courts of the United States." The Government asserts that the district court's rulings on Smith's motions were interlocutory and not final because orders "granting or denying a pre-indictment motion to suppress do[ ] not fall within any class of independent proceedings otherwise recognized by [the Supreme Court]." *Di Bella v. United States*, 369 U.S. 121, 129 (1962). Under *Di Bella*, the Government argues that Smith's motions are functionally pre-indictment motions to suppress, and the suppression issue is interlocutory because it is subsumed by the overarching possibility of a forthcoming criminal trial.

Notably, however, the general rule of *Di Bella*—that orders granting or denying pre-indictment motions to suppress are not a part of independent, immediately appealable proceedings—is not absolute: "Only if the motion is solely for return of property and is in no way tied to a criminal prosecution *in*

*esse* against the movant can the proceedings be regarded as independent." *Id.* at 131–32.

As Smith correctly points out, numerous cases have found that similar motions to unseal documents (contrasted with suppression motions) are final and appealable. In *In re Search Warrant for Secretarial Area Outside Office of Gunn*, the Government executed numerous search warrants, and a newspaper publisher filed Rule 41 motions with the district court to unseal affidavits in support of these warrants. 855 F.2d 569, 571 (8th Cir. 1988). The district court denied the motions and allowed the affidavits to remain sealed for up to thirty additional days. *Id.* On appeal, the Eighth Circuit squarely addressed the immediate appealability of orders such as the district court's, concluding that they were final orders:

> The district court order denied appellants' motion to unseal and thus conclusively rejected appellants' asserted right to immediate access to these documents. Deferral of appellate review pending district court reconsideration after 30 days, or until after additional extensions of time have expired, would effectively deny appellants much of the relief they seek, that is, immediate access.

*Id.* After concluding that the orders were final and appealable, the court noted that the collateral order exception did not apply to make the orders immediately appealable on this basis because "there is no 'underlying' proceeding in this case. The district court order is not a component of another proceeding." *Id.* at 572.

More squarely to the Government's position that Smith's motions are de facto motions to suppress and unappealable under *Di Bella*, Smith cites *United States v. Pantelidis*, 335 F.3d 226 (3d Cir. 2003). There, the Third Circuit held that it had jurisdiction to hear an appeal of a district court's denial of a Rule 41 motion to return property based on the exception set forth in *Di Bella*. *Id.* at 233–34. The court recognized that the movant sought

strictly the return of the property rather than the suppression of its evidentiary value. *Id.* Smith cites several other cases similar to *Pantelidis* and *Office of Gunn* on the jurisdictional question. *See, e.g.*, *Times Mirror Co. v. United States*, 873 F.2d 1210, 1212 (9th Cir. 1989) ("This court's jurisdiction to review the district courts' orders denying access rests on 28 U.S.C. § 1291 . . . Each of the orders denying access 'finally adjudicated the matter presented to the district court and was not a mere component of a different proceeding.'").

Finally, the cases cited by the Government in support of its application of *Di Bella* are distinct. In *United States v. Furina*, 707 F.2d 82, 84 (3d Cir. 1983), the court dismissed an appeal of an order denying a Rule 41 motion for lack of jurisdiction where "[a]ppellants . . . made it very clear that they seek more than return of property. Suppression of evidence is the primary aim of their motions, and that is enough under *Di Bella* to require that on this record the appeal be dismissed." Other Third Circuit cases relied upon by the Government reached similar conclusions about an appellant's Rule 41 motion for the return of property based in large part on the implicit, if not express, intention of suppressing evidence. In *Meister v. United States*, 397 F.2d 268, 269 (3d Cir. 1968), the court found that where an appellant sought the return of documents and an injunction preventing their future use against him, "the whole tenor of the amended complaint ma[de] it abundantly clear that the prime, if not sole, purpose of the amended complaint was to prevent the use of such records in potential criminal or civil proceedings against plaintiff." *See also In re Grand Jury*, 635 F.3d 101, 105 (3d Cir. 2011) ("Although the appellant's motion could have sought solely the return of property, in fact it did not: it sought both the return of property and the suppression of evidence. Accordingly, the order denying the motion is not final and appealable under *Di Bella*.").

6

No. 16-20562

Under the exception of *Di Bella*, this Court has jurisdiction. 369 U.S. at 131–32 ("Only if the motion is solely for return of property and is in no way tied to a criminal prosecution *in esse* against the movant can the proceedings be regarded as independent."). A warrant issued pre-indictment is, by definition, issued before criminal charges are filed—there were no criminal charges pending against Smith when he filed his initial motions, when the district court denied his motions, when he appealed these motions, and at present. Furthermore, Smith expressly *does not* seek the suppression of evidence. Nor could he—as stated, no prosecution presently exists in which he could seek suppression (even a year after the initial execution of the warrants). For these reasons, the exception of *Di Bella* applies and jurisdiction exists.

## II. The judgment of the district court is vacated and remanded for further factual findings.

Turning to the merits of his appeal, Smith argues that he has a common law right to access the affidavits supporting the pre-indictment warrants. Blue Br. at 9–23. Notably, he does *not* argue that the First Amendment grants him a right of access to the documents, which is an issue frequently litigated in similar cases.[1] *See, e.g., Baltimore Sun Co. v. Goetz*,

---

[1] The First Amendment right of access and the common law qualified right of access differ in significant ways. The First Amendment right of access stems from the historical practice of opening criminal trials to the public. "[T]he circumstances under which the press and public can be barred from a criminal trial are limited; the State's justification in denying access must be a weighty one. Where . . . the State attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 509–10 (1984) (quoting *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606–07 (1982)). To guide the determination of whether a First Amendment right of access exists, the Supreme Court has established a two-part inquiry: "(1) whether the proceeding has historically been open to the public and press; and (2) 'whether public access plays a significant positive role in the functioning of the particular process in question.'" *In re Hearst Newspapers, LLC*, 641 F.3d

No. 16-20562

886 F.2d 60, 64–66 (4th Cir. 1989) (finding that a newspaper publisher seeking to unseal pre-indictment search warrant affidavits could not invoke the qualified First Amendment right of access but recognizing the publisher's common law right of access).

We hold that the qualified common law right of access can extend to an individual seeking to access pre-indictment search warrant materials, and the decision of whether access should be granted must be left to the discretion of the district court, upon the court's consideration of "the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 599. Though the district court purported to conduct this case-specific analysis, its findings evade meaningful appellate review because they are too conclusory and lack detail, as this circuit and other circuits have required in similar situations. For these reasons, the judgment of the district court is vacated and remanded for further factual clarification.

**a. The qualified common law right of access must be assessed on a case-by-case basis.**

**i. Standard of Review**

Defining the precise scope of the common law right to access judicial records is a question of law, which is reviewed *de novo. Times Mirror Co.*, 873 at 1212 ("[T]he question[ ] whether the common law provides the public with

168, 175 (5th Cir. 2011) (quoting *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8–9 (1986)).

Even absent a finding of a First Amendment right of access, the Supreme Court has articulated a qualified right of access to judicial documents that is born from the common law. In *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597–99 (1978), the Court recognized that the public has a right "to inspect and copy public records and documents, including judicial records and documents" which "is not absolute." Further, "[a]lthough the common law right of access to judicial records is not absolute, 'the district court's discretion to seal the record of judicial proceedings is to be exercised charily.'" *S.E.C. v. Van Waeyenberghe*, 990 F.2d 845 (5th Cir. 1993) (quoting *Fed. Sav. & Loan Ins. Corp. v. Blain*, 808 F.2d 395, 399 (5th Cir. 1987)).

a qualified right of access to warrant materials . . . [is] . . . [a] question[ ] of law, requiring *de novo* review.").

### ii.  Case Law

There is a general, common law right to inspect and copy public records and documents, including judicial records and documents, but this right is not absolute. *Nixon,* 435 U.S. at 597–99. The scope of this qualified right of access is the primary issue in this appeal, as the parties dispute whether it encompasses access to warrant materials during a pre-indictment investigation.

We have not squarely addressed the precise scope of the qualified common law right of access to judicial records as it applies to pre-indictment warrant materials. Other circuits that have addressed the question have reached conflicting conclusions. Despite not speaking to this precise issue, the Fifth Circuit has decided several cases on the qualified right of access in more general terms, and these decisions are instructive for analyzing the application of that right in this case.

### 1.  *Times Mirror Co. v. United States*

The Ninth Circuit takes a bright line position on the public's common law qualified right of access to judicial records: the right simply does not extend to pre-indictment warrant materials. In *Times Mirror*, district courts in California issued five warrants related to a national fraud and bribery investigation based on sealed probable cause affidavits. 873 F.2d at 1211. Several media organizations filed separate civil actions in the respective district courts seeking to unseal the warrant materials. *Id.* at 1211–12. The district courts ultimately denied the requests and the media organizations appealed, arguing that the warrant materials should be unsealed under either Rule 41(g), a First Amendment qualified right of access, and most

9

relevant for present purposes, the common law qualified right of access. *Id*. at 1212.

The Ninth Circuit affirmed the district courts. *Id*. at 1221. The Ninth Circuit noted that, based on its precedent, the right does not extend to *all* judicial and quasi-judicial documents. *Id*. at 1219. The court added that none of its previous cases "recognized a common law right of access to judicial records when there is neither a history of access nor an important public need justifying access." *Id*. After announcing this standard, the court concluded that it could never be satisfied in the pre-indictment context: "Under this important public need or 'ends of justice' standard, appellants' claim must be rejected. We believe this threshold requirement cannot be satisfied while a preindictment investigation is ongoing." *Id*.

To justify its *per se* ban on using the common law right of access to unseal pre-indicitment warrant materials, the Ninth Circuit incorporated its reasoning regarding the First Amendment qualified right of access. *Id*. That discussion focused on the potential for public access to hinder rather than facilitate the warrant process and any accompanying criminal investigations. *Id*. at 1215. Analogizing to grand jury proceedings, which were held in secret, the court identified three main risks of allowing warrant proceedings and pre-indictment warrant materials to be made public. *Id*. at 1215–16. First, those under investigation could "destroy evidence, coordinate their stories before testifying, or even flee the jurisdiction." *Id*. at 1215.  Second, those who provided testimony in support of a warrant's issuance might be placed in danger or chilled from providing this testimony in the first place. *Id*. Finally, those named in a warrant may never be charged with a crime, but publicizing warrant materials could tarnish their reputations in the public's view and leave them without a forum in which to exonerate themselves. *Id*. at 1215– 16. In sum, the Ninth Circuit stated "the ends of justice would be frustrated,

not served, if the public were allowed access to warrant materials in the midst of a preindictment investigation into suspected criminal activity." *Id.* at 1219.

### 2. *Baltimore Sun Co. v. Goetz*

The Fourth Circuit requires a case-by-case determination of how the common law qualified right of access applies to pre-indictment warrant materials. The facts of *Baltimore Sun* are similar to those of *Times Mirror*—a newspaper publisher filed a motion with the district court to unseal a search warrant affidavit. 886 F.2d at 62. While the appeal was pending, a grand jury returned indictments based on the warrant and a magistrate judge unsealed the affidavit at the Government's request. *Id.* at 63.

After first concluding that the appeal was not moot in light of the unsealing of the affidavit, the Fourth Circuit then made the threshold finding that the warrant affidavit was a judicial record because a judicial officer must review the affidavit, the judicial officer's review is then subject to challenge through a motion to suppress, and the Rules of Criminal Procedure require the resulting warrant and all related papers to be filed with the clerk of the district court. *Id.* at 63–64. From there, the court agreed with the Ninth Circuit in *Times Mirror* and determined that the press did not have a First Amendment right of access to the warrant affidavit, even though a warrant affidavit was a judicial record. *Id.* at 64–65.

As in *Times Mirror*, the Fourth Circuit in *Baltimore Sun* then conducted a separate analysis as to whether the affidavit should be unsealed based on the common law qualified right of access. *Id.* at 65–66. Here, the Fourth Circuit departed from the Ninth Circuit by vacating the district

11

court's decision not to unseal the affidavit.[2] *Id.* The Fourth Circuit distinguished grand jury proceedings from the disclosure of warrant materials, pointing out that the Rules of Criminal Procedure expressly govern the secrecy of grand jury proceedings but the same is not true of warrant proceedings. *Id.* at 65. Relying on the Supreme Court's decision in *Nixon*, the court adopted a case-by-case approach to the unsealing of pre-indictment warrant materials:

> [T]he common law qualified right of access to the warrant papers is committed to the sound discretion of the judicial officer who issued the warrant. Taking into consideration, as *Nixon* requires, all of the relevant facts and circumstances, the officer may file all or some of the papers under seal for a stated time or until further order. Or, as frequently is done, he may conclude that the circumstances do not justify secrecy. The judicial officer's decision to seal, or to grant access, is subject to review under an abuse of discretion standard.

*Id.*

The court then explained the standard that the district court should apply in any given case for determining whether to unseal a warrant affidavit. *Id.* The court stated that the Government may properly ask to seal warrant materials, and the district court may properly grant that request by adopting the Government's facts where appropriate. *Id.* And on a subsequent request to unseal, "[t]he judicial officer may deny access when sealing is 'essential to preserve higher values and is narrowly tailored to serve that interest.'" *Id.* at 65–66 (quoting *Press–Enterprise Co.*, 464 U.S. at 510). In appropriate circumstances, narrow tailoring may require providing access to some documents or redacted documents. *Id.* at 66.

---

[2] Because the affidavit had already been unsealed, however, the court found that further proceedings in the district court were unnecessary. *Baltimore Sun*, 886 F.2d at 66.

No. 16-20562

The Fourth Circuit noted that the district court erred by refusing to grant access to the Government's proposed redacted version of the affidavit. *Id.* The court criticized the district court for not citing the affidavit with specificity and instead making only conclusory assertions that the public interest of the investigation outweighed the newspaper publisher's right of access. *Id.*[3]

### 3.  Fifth Circuit Guidance

As noted, the Fifth Circuit has not spoken to the precise question addressed in *Times Mirror* and *Baltimore Sun*—whether the common law right of access to judicial documents extends to pre-indictment warrant materials. This Court has, however, spoken to different questions implicating that qualified right in other situations, and substantial guidance can be gleaned from these decisions.

*S.E.C. v. Van Waeyenberghe* involved the SEC's civil injunctive action against a defendant for violations of federal securities laws. 990 F.2d at 847. During a settlement hearing, the parties successfully settled but disagreed as to whether the resulting settlement agreement should be sealed. *Id.* After the parties unsuccessfully tried to resolve this dispute, the district court *sua sponte* sealed the entire case and the parties finalized their settlement with the SEC objecting to the sealing. *Id.* The district court signed a final order of permanent injunction and attached the consent decree to it before indicating that it would entertain the SEC's motion to unseal all of the case except for the final order. *Id.* The SEC filed such a motion, which the district court granted. *Id.* Later, the district court sealed the transcript of the settlement

---

[3] In *Office of Gunn*, the Eighth Circuit also took a case-specific approach to a request to unseal pre-indictment search warrant affidavits, though its analysis applied only the standard for the First Amendment right of access without differentiating the standard for the common law right of access. 885 F.2d at 574–75.

hearing. *Id*. The SEC appealed the district court's sealing of the final order and transcript. *Id*.

This Court recognized that "[a]lthough the common law right of access to judicial records is not absolute, 'the district court's discretion to seal the record of judicial proceedings is to be exercised charily.'" *Id*. at 848. In addition, the Court acknowledged that "access has been denied where court files might have become a vehicle for improper purposes." *Id*. In exercising discretion to seal judicial records, this Court advised that district courts "must balance the public's common law right of access against the interests favoring nondisclosure." *Id*. In conducting this balance, the Court said, a district court should take stock of "[t]he presumption in favor of the public's common law right of access to court records," which applies so long as a document is a judicial record. *See id*. at 849 (finding that the settlement agreement filed with the court was a judicial document and therefore was entitled to this presumption of public access). For clarity, though, the Court pointed out that the Fifth Circuit has not assigned a particular weight to the presumption in favor of access, unlike some other circuits which have characterized it as "strong" or others which reduce it to "one of the interests to be weighed." *Id*. at 848 n.4.

Applying these principles, the Fifth Circuit found that the district court abused its discretion, reversing and remanding for further proceedings. *Id*. at 850. Initially, this Court briefly pointed out that the district court did not apply the presumption in favor of public access to judicial records. *Id*. at 849. In addition, the Court criticized the district court's failure to "articulate any reasons that would support sealing the final order." *Id*. The district court acknowledged that the public had a right to know that the defendant had been enjoined from certain conduct as a result of the SEC's action, but the defendant argued that this right would be protected by regulations requiring

the defendant himself to disclose the injunction. *Id.* The Fifth Circuit found this reliance on regulatory disclosures misplaced because the right of access applies to the records which contain information, not simply the information itself: "The public's right to information does not protect the same interests that the right of access is designed to protect. 'Public access [to judicial records] serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of its fairness.'" *Id.* (quoting *Littlejohn v. Bic Corp.*, 851 F.2d 673, 682 (3d Cir. 1988) (alterations in original)).

Later, in *United States v. Chavis*, this Court found that the district court did not abuse its discretion in balancing the public's common law right of access against the interests favoring nondisclosure by redacting portions of a sentencing memorandum, pointing to the "very specific" nature of the district court's order. 111 F.3d 892 (5th Cir. 1997) (unpublished) (citing *Van Waeyenberghe*, 990 F.2d at 848).

Even more recently, this Court applied *Van Waeyenberghe* to a third-party movant's appeal from a district court's order, in which the movant argued that because the order was issued under seal, it did not afford the movant a sufficient remedy for the violation of its rights. In *United States v. Holy Land Foundation for Relief and Development*, 624 F.3d 685, 688 (5th Cir. 2010), a grand jury issued an indictment charging the defendants with engaging in a criminal conspiracy to provide support to Hamas. Attached to its pre-trial brief, the Government provided a list of "Unindicted Co-conspirators and/or Joint Venturers," which included the North American Islamic Trust (the "Trust"), the aforementioned third-party movant. Unlike the order, the list of unindicted co-conspirators was not filed under seal. *Id.* The Trust, which was not indicted and took issue with being named a co-

conspirator, filed a motion with the district court, arguing that its Fifth Amendment rights were violated by the unsealed list of co-conspirators; the Trust's motion further sought relief, including "a public declaration that its rights had been violated [and] the expungement of its name from any public document filed or issued by the Government identifying [the Trust] as an unindicted coconspirator . . . ." *Id.* The district court granted the Trust's motion in part in an opinion filed under seal. The court found that the Trust's Fifth Amendment rights had been violated and ordered the sealing of the list of unindicted co-conspirators, but it declined to expunge the Trust's name from the list of co-conspirators. The Trust appealed, contending that the district court abused its discretion by sealing this opinion. *Id.* at 689.

Emphasizing that the common law right of access promotes the trustworthiness of the judicial system, this Court reversed the district court's order which sealed its opinion. *Id.* at 690–91. Though both parties speculated as to the district court's motivations for sealing the opinion, the effect of the court's order "was to leave [the Trust] hamstrung in its ability to mitigate the damage done by its public identification as a possible coconspirator in the activities of the [indicted defendants]." *Id.* at 690. And because there were no countervailing government interests favoring the opinion being sealed, the Court reversed. *Id.* at 691.

### iii.  Discussion

In the Fifth Circuit, the common law right of access to judicial records has consistently been addressed on a case-by-case basis, indicating that this Court should adopt such an approach in the context of pre-indictment warrant materials. In all of the major cases discussed above, the Fifth Circuit has left the decision to seal judicial records to the discretion of the district court. And in so doing, the Fifth Circuit has consistently required the district court to explain its decisions to seal or unseal.  *Van Waeyenberghe*, 990 F.2d

at 849 ("We find no evidence in the record that the district court balanced the competing interests prior to sealing the final order. First, the district court made no mention of the presumption in favor of the public's access to judicial records. Second, the district court did not articulate any reasons that would support sealing the final order."); *Holy Land Foundation*, 624 F.3d at 690 ("Here, the district court did not explain why it chose to seal its opinion and order holding that [the Trust's] rights were violated.").

Underscoring this conclusion, the policy justifications that concerned the Ninth Circuit in *Times Mirror* are not at all diluted by a case-specific approach. In any given case, the discretion of the district court protects these interests, as this Court has repeatedly emphasized; in other words, this Court has consistently trusted district courts to exercise their discretion to determine when court files "might . . . become a vehicle for improper purposes." *Van Waeyenberghe*, 990 F.2d at 848. If the unsealing of pre-indictment warrant materials would threaten an ongoing investigation, the district court has discretion to make redactions prior to unsealing or, where necessary, to leave the materials under seal. The same is true where unsealing such materials might endanger or discourage witnesses from providing evidence or testimony, or where the publication of a warrant could damage an unindicted target's reputation while leaving no judicial forum to rehabilitate that reputation.

The final reasons for extending the Fifth Circuit's general approach and adopting the Fourth Circuit's reasoning from *Baltimore Sun* are the affirmative policy justifications behind the common law right of access to judicial documents. This Court in *Van Waeyenberghe* acknowledged that the right of access promotes the trustworthiness of the judicial process, curbs judicial abuses, and provides the public with a better understanding of the judicial process, including its fairness. *Id.* at 849. The right serves as a

"check[ ] on the integrity of the system." *Id.* at 849–50 (quoting *Wilson v. American Motors Corp.*, 759 F.2d 1568, 1571 (11th Cir. 1985) (alterations original)); *see also Holy Land Foundation*, 624 F.3d at 690 ("'Public confidence [in our judicial system] cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view.'" (quoting *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 230 (5th Cir. 2008) (alterations in original)). A case-by-case approach to pre-indictment warrant materials gives the district court discretion in balancing the legitimate interests *against* public access against the public's interests *supporting* access.

In sum, we extend the case-by-case approach previously used by this Court for assessing the common law qualified right of access to judicial records to situations involving an individual's request to access pre-indictment warrant materials such as the affidavits in this case. In cases involving a request to unseal affidavits in support of pre-indictment search warrants, district courts should exercise their discretion by balancing the public's right to access judicial documents against interests favoring nondisclosure. *Van Waeyenberghe*, 990 F.2d at 848.

**b. The district court abused its discretion by finding that the pre-indictment warrant materials here should remain sealed without making sufficient factual findings.**

Having extended a qualified right of access to pre-indictment warrant materials, the Court now turns to whether the district court properly found that the pre-indictment warrant affidavits in this case should remain sealed.[4]

---

[4] A gateway question—whether the warrant materials are judicial records—is not an issue on this appeal. *See Baltimore Sun*, 886 F.2d at 63–64 (concluding that pre-indictment search warrant materials are judicial records); *Van Waeyenberghe* 990 F.2d at 849

### i.  Standard of Review

Because the decision as to access is one left to the sound discretion of the trial court, the Fifth Circuit reviews the district court's decision to keep the search warrant affidavits under seal for abuse of discretion. *Id.* at 848 (citing and quoting *Nixon*, 435 U.S. at 598–600).

### ii.  The District Court's Opinion

The district court's opinion discussed many of the cases cited above. Without making clear which of these standards it purported to apply, the district court stated:

> [T]he court has reviewed the unsealed affidavit in Cause Number 16-mj-409 and the corresponding affidavits that were redacted by either the Government or, line by line, by the Magistrate Judge, and the court finds that there is a substantial probability that the investigation will be compromised if the affidavit is unsealed.

Going further, the district court noted the unsettled nature of the law in the Fifth Circuit on the common law right of access to pre-indictment warrant materials, along with the circuit split between the Ninth and Fourth Circuits. The district court "like the Ninth Circuit, ha[d] concerns that 'the ends of justice would be frustrated, not served, if the public were allowed access to warrant materials in the midst of a preindictment investigation into suspected criminal activity." Additionally, the district court believed that a magistrate judge's line-by-line review to determine which information in a warrant affidavit should be unsealed was a waste of judicial resources, "particularly since the government officials conducting the investigation are better equipped to determine what disclosures could be detrimental to the investigation."

---

(concluding that the settlement documents, final order, and transcript were judicial records).

### iii. Discussion

As an initial matter, it is unclear whether the district court applied the proper case-by-case standard. The court briefly noted that "there is a substantial probability that the investigation will be compromised if the affidavit is unsealed" based on a review of the affidavits and redacted versions before a longer discussion of why a case-by-case assessment of the materials seemed inappropriate. Notwithstanding its brief reference to the specific investigation from which this case stems, the district court did not apply the *Van Waeyenberghe* factors by conducting a case-specific balancing of the public's qualified right of access against the interests favoring non-disclosure.

Assuming that the district court assessed the affidavits in this case under *Van Waeyenberghe,* its opinion does not contain the requisite specificity. The Fourth Circuit's opinion in *Baltimore Sun* advised that a district court must review the individual affidavits in order to "make findings and conclusions specific enough for appellate review." 886 F.2d at 66. This requirement of specificity from district courts is consistent with the value that the Fifth Circuit has placed on detailed, clear, and specific findings made by a district court in sealing or unsealing an order. *See, e.g., Chavis*, 111 F.3d at 892 (finding that a district court did not abuse its discretion because, in large part, "[t]he district court's order [was] not general in nature, but [was] very specific to particular information, in one particular document, in this defendant's sentencing proceeding").

This is not to say that a district court must go to painstaking lengths to review pre-indictment warrant materials, detailing factual findings on each line of every affidavit. This Court is sensitive to the district court's concern over the judicial resources that would have to be expended if that much detail were unilaterally required. As a result, the requisite degree of specificity will

No. 16-20562

vary from case to case, but in most cases, a district court should at least "articulate any reasons that would support sealing [a judicial document]," *Van Waeyenberghe*, 990 F.2d at 849, or "explain why it chose to seal [a judicial document]," *Holy Land Foundation*, 624 F.3d at 690.

The findings made by the district court in this case are bare—the entire case specific balance of the right of access against interests favoring non-disclosure is the statement that "there is a substantial probability that the investigation will be compromised if the affidavit is unsealed." While the district court need not conduct an exhaustive assessment, it must generally articulate its reasons to support sealing the affidavits with a level of detail that will allow for this Court's review.[5]

Where a district court's lack of factual findings has left this Court "unable to discern . . . whether it was an abuse of discretion" to leave a judicial document under seal, this Court has previously remanded so that the district court could "make explicit findings as to the necessity of keeping" that document sealed. *Test Masters*, slip op. at 3-4. Given the district court's failure to conduct the balancing required by *Van Waeyenberghe*, a remand for similar purposes is appropriate here. Accordingly, the judgment of the district court is vacated and this case is remanded for further factual findings under the *Van Waeyenberghe* balancing test.

---

[5] To the extent that the district court would have difficulty explaining its reasoning without disclosing sensitive information from the affidavits, it may file its reasoning under seal. *See Baltimore Sun*, 866 F.2d at 65 ("The judicial officer may explicitly adopt the facts that the government presents to justify sealing when the evidence appears creditable. But the decision to seal the papers must be made by the judicial officer; he cannot abdicate this function. If appropriate, the government's submission and the officer's reason for sealing the documents can be filed under seal." (internal citations omitted)). Alternatively, the district court may find it appropriate to unseal some of the warrant materials or unseal redacted versions. *Id.* at 66; *Test Masters Educ. Servs., Inc. v. Robin Singh Educ. Servs., Inc.*, No. 13-20250, slip op. at 3 (5th Cir. Oct. 22, 2015).

No. 16-20562

Vacating and remanding the district court's judgment is Smith's second choice, as he would rather have the district court's order reversed and the affidavits unsealed outright. In this regard, he relies on *Breidenbach v. Bolish*, 126 F.3d 1288 (10th Cir. 1997), *overruled on other grounds as stated in Currier v. Doran*, 242 F.3d 905 (10th Cir. 2001). The plaintiffs, whose homes were the targets of search warrants, sued an FBI agent, alleging that he recklessly or knowingly made false statements in affidavits supporting the warrants. *Id.* at 1290–91. The Tenth Circuit affirmed the district court's qualified immunity-based dismissal of the *Bivens* claim against the agent, reasoning that the plaintiffs did not allege sufficient facts (many of which were unavailable because they appeared in the sealed affidavits) regarding the objective reasonableness of the agent's actions. *Id.* at 1292–93. The court also recognized the "Catch–22" caused by this result: without access to the sealed warrant materials, the plaintiffs could not be expected to make more detailed allegations relating to those affidavits (and may even subject counsel to sanctions for presenting pleadings without evidentiary support). *Id.* at 1293–94. According to the court, the plaintiffs did not, however, "pursue every possible avenue to obtain the necessary facts to support their legal claims prior to filing a complaint in federal court." *Id.* at 1294. For this reason, the court suggested an alternative procedural path: seek "an order from the judge who sealed the affidavit to allow an unsealing or limited unsealing of the affidavit for use in preparing their civil complaint," and appeal any denial of that request. *Id.* at 1294.

*Bolish* does not warrant outright unsealing in this case. The procedural route Smith chose here is precisely what the *Bolish* court recommended—ask the district court to unseal the affidavit and appeal a denial of that decision if necessary. As discussed above, without more detailed findings from the district court regarding the reasons for keeping the warrant materials sealed,

this Court cannot properly assess those materials and the impact of unsealing them; the district court is in the best position to conduct the required balancing test. As a result, Smith's procedural path to obtaining the affidavits may be slowed by a remand of this action, but the ultimate relief he seeks is still entirely available.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is VACATED and this case is REMANDED for a case-by-case analysis and a sufficiently detailed factual assessment.