# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 4, 2023

Lyle W. Cayce
Clerk

_____

No. 23-20097

_____

United States of America,

*Plaintiff—Appellee*,

*versus*

Saman Ahsani; Cyrus Allen Ahsani,

*Defendants—Appellees*,

*versus*

The Financial Times Limited;
Global Investigations Review; The Guardian,

*Intervenors—Appellants*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC Nos. 4:19-CR-147-1,
4:19-CR-147-2

_____

Before Higginbotham, Smith, and Engelhardt, *Circuit Judges*.
Jerry E. Smith, *Circuit Judge*:

For over a decade, brothers and energy consultant executives Saman and Cyrus Ahsani led an international bribery scheme implicating companies

and individuals across the globe.  In 2019, they pleaded guilty of crimes related to their participation in the enterprise and their attempts to cover it up.

Predictably, media interest in the case was substantial.  The press's attempts to report on it, however, were hampered by the fact that almost every document filed with the district court was under seal.  Eventually, several press agencies intervened and successfully moved to unseal—with redactions—almost all the documents in the case up to that point.

The practice of sealing many documents persisted, however, all the way through Saman Ahsani's sentencing in January 2023.  Not only were many of the documents filed under seal, but the district court also closed part of the sentencing hearing to the press and public.  At the same time, media interest in the case remained high, and the intervening press organizations moved to unseal numerous documents related to the sentencing.  The district court denied their motion.

On appeal, the intervening organizations maintain that they have both a First Amendment and a common-law right to access at least some of the sealed information.  They also challenge the court's procedures in closing part of the sentencing hearing.  Although we acknowledge numerous procedural irregularities in the district court, we ultimately affirm its denial of the intervenors' motion to unseal.

## I.

Saman and Cyrus Ahsani[1] were executives of the Monegasque energy consulting firm Unaoil.  They led an international corruption scheme for over a decade, bribing governmental officials in the Middle East, Africa, and Central Asia to obtain improper business advantages and win contracts from

---

[1] We refer to each brother by his first name for clarity.

No. 23-20097

foreign governments for Unaoil and numerous multinational oil and gas companies. The scheme had substantial negative impact on the rule of law and political stability in several countries.

In March 2019, Saman pleaded guilty of numerous crimes: (i) conspiracy to violate the Foreign Corrupt Practices Act; (ii) money laundering in order to promote and conceal the scheme; and (iii) obstruction of justice through falsification and destruction of records.[2] His sentencing would not occur for several years.

In June 2020,[3] *The Financial Times*, *Global Investigations Review*, and *The Guardian* (collectively, "intervenors") moved to intervene and unseal documents. Until that point, almost all docketed records, including the complaint and the plea agreement, had been sealed or redacted. Intervenors contended that the judicial documents should be unsealed under both the First Amendment and common-law rights of access. They also asked the court to provide notice of and access to any future proceedings, including the sentencing hearing.

The district court granted intervenors' motion and ordered that almost all the documents be unsealed in redacted form. The court also stated, "Intervenors and the public shall receive notice of and access to future proceedings in this case, including the defendants['] sentencing."

Some time later, the district court publicly scheduled Saman's sentencing for January 30, 2023. In the period leading up to the sentencing, the United States and Saman filed numerous documents under seal. The nature of some of the sealed documents was listed on the docket, but others

---

[2] *See* 15 U.S.C. §§ 78dd-1, 78dd-2, 78dd-3; 18 U.S.C. §§ 371, 1519, 1956.

[3] The presiding judge at the time of the 2020 motion and decision was Judge Gilmore, who retired, whereupon the case was reassigned to Judge Hanen in December 2021.

appeared only as "Sealed Events," leaving the public in the dark as to both their contents and their provenance.

About a week before the sentencing, intervenors moved a second time to unseal documents; this time, they sought Saman's sentencing memoranda. They later expanded their request to other documents related to Saman's sentencing.[4] As in their 2020 motion, intervenors alleged the right to access them under both the First Amendment and common law.

Before ruling on that motion, and without providing express advance notice to the public, the district court conducted a closed proceeding in chambers on January 30—the morning of Saman's sentencing. Nevertheless, the public sentencing occurred as expected that same day. Intervenors inferred both the existence of the closed proceeding and the fact that it related to the merits of Saman's sentence from statements made during the public part of the sentencing hearing, such as, "Our argument would be based upon what was presented earlier to Your Honor . . . ."[5] The closed proceeding was never docketed, and no transcript was filed until March 23, 2023. Even then, the entire transcript was sealed.

During the public portion of the sentencing hearing, both the United States and Saman made numerous statements relevant to this appeal and that

---

[4] Intervenors supplemented their motion with a letter. They expanded their request to more documents and docket entries under the same legal theories as in their motion. Specifically, they sought access to "any judicial documents—including any transcripts of any proceedings—concerning [Saman's] sentence" that were under seal. Intervenors also asked that the court docket any records or proceedings that were not already "reflected on the public docket." Intervenors were functionally unable to request the additional documents because the documents were either filed after the motion or were filed before the motion as "Sealed Events" and therefore of unknown character.

[5] In their briefs on this appeal, the parties have dispelled any lingering doubts about the nature of the closed proceeding on January 30, 2023, by expressly (and correctly) describing it as part of Saman's sentencing hearing.

indicated Saman had cooperated with the United States in some way.[6]  And Saman himself touted the value of cooperation and stated that he had cooperated with U.S. authorities.

At the conclusion of the hearing, the court imposed a prison term of a year and a day plus one year of supervised release.  There was also a monetary judgment of $1.5 million.

Although Saman's sentencing had occurred, the court had yet to rule on intervenors' motion to unseal.  About a week later, the United States and the Ahsanis (collectively, "the parties") jointly opposed the motion.  But because the opposition brief was docketed as a "Sealed Event," neither intervenors nor the general public was aware that anyone opposed intervenors' motion, let alone the grounds on which it was opposed.

Several weeks later, on February 23, 2023, the court acknowledged the parties' opposition and denied intervenors' motion without prejudice. The order was, admittedly, minimalist.  It quoted the findings that the court had articulated in 2020 when it granted intervenors' first motion to unseal, namely, that "public disclosure" of details regarding Saman's "ongoing cooperation" with the United States would "jeopardize the defendants' safety, the safety of their families, and the integrity of [the United States'] ongoing investigation"—interests that it identified as "compelling."[7]

---

[6] For example, counsel for the United States said that "[f]rom Day 1 [Saman] was all in, an open book; and without going into specifics, as described in our memorandum, he's been doing everything he possibly can for the last four years."  Saman's counsel alleged that Saman "kept a copy, unknown to anybody else . . . of the key documents and the key recordings [that the Ahsanis had destroyed]."

[7] In their appellate briefs, the parties suggest a third interest: the "privacy interest" of the defendants and of "third parties."  The district court made no finding about such an interest, so if the parties believe that interest is compelling, they should ensure that it is adequately briefed and addressed in the district court moving forward.  We are, of course,

No. 23-20097

The court found "no good reason to set aside" the earlier order, "especially with respect to the sentencing memoranda." In relevant part, the court concluded that the First Amendment rights of the press "cannot trump the rights of [Saman] to be safe from harm and the Government to have its investigations free from impairment." The court also considered the partial remedy of redaction but concluded that redacting the documents "would essentially destroy any value" they had. Finally, the court noted that intervenors could re-urge the motion "if and when circumstances change." Intervenors timely appealed from the denial.[8]

## II.

We review constitutional and other legal questions (including the scope of the First Amendment) *de novo*.[9] We review factual findings for clear error.[10]

In the context of common law, we review decisions to seal or unseal documents for abuse of discretion.[11] A court abuses its discretion when it (i) fails to identify and apply the correct legal standards; or (ii) fails to provide

---

able to consider all interests raised by the parties when determining whether it is appropriate to seal documents filed with this court.

[8] The parties' practice of filing sealed documents continued in our court when they filed both sealed and public-but-redacted versions of their briefs. Intervenors moved to unseal the parties' briefs (or publish them with narrow redactions). We carried the motion with the case but address it in a separate order.

[9] *See In re Hearst Newspapers, L.L.C.*, 641 F.3d 168, 174 (5th Cir. 2011) (citing *United States v. Brown*, 250 F.3d 907, 913 (5th Cir. 2001)), *as revised* (June 9, 2011).

[10] *Id.* at 174–75 (citing *Brown*, 250 F.3d at 913).

[11] *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 450 (5th Cir. 2019).

No. 23-20097

sufficient reasons for its decision to enable appellate review.[12]

## III.

Intervenors raise two primary claims under the First Amendment and common law relating to the decision to close part of Saman's sentencing hearing and seal related documents.

*First*, the court violated the First Amendment by failing to provide notice and an opportunity to be heard before closing part of the hearing.

*Second*, when the court denied the motion to unseal, it applied the wrong legal standards under the First Amendment right of access to criminal proceedings and the common-law right of access to judicial records. Intervenors posit that the order did not reflect the required analytical process. They also contend that the court should have unsealed everything because the fact of Saman's cooperation was public. Relevant to that second claim is intervenors' ancillary argument that the court deprived them of a meaningful opportunity to be heard regarding their motion to unseal when it allowed the parties to file an entirely sealed opposition brief without any notice before it denied the motion.

## A.

Intervenors take issue with how the district court handled the closed portion of Saman's sentencing and the subsequent sealing of the transcript. We share intervenors' concerns about the failure to provide meaningful procedural safeguards before (or even after) closing the proceeding, but the procedural irregularities did not rise to reversible error.

---

[12] *Id.* at 450–51 (citations omitted).

1.

The press and public enjoy a First Amendment right of access to many criminal proceedings. *Press-Enter. Co. v. Superior Ct.* (*Press-Enter. II*), 478 U.S. 1, 8 (1986). To determine whether there is a First Amendment right to access a given proceeding, courts consider two factors: experience and logic. *Id.* at 8–9. The experience factor requires courts to determine "whether the place and process have historically been open to the press and general public." *Id.* at 8. The logic factor involves assessing "whether public access plays a significant positive role in the functioning of the particular process in question." *Id.* (citing *Globe Newspaper Co. v. Superior Ct.*, 457 U.S. 596, 606 (1982)).

We have applied the experience-and-logic test to sentencing hearings and concluded that the First Amendment right of access attaches to them. *Hearst*, 641 F.3d at 175. The experience factor weighs in favor of access because sentencing proceedings were traditionally open to the public. *Id.* at 177. And the logic factor likewise justifies access because of the positive role that public access to such proceedings plays: It restrains judicial power by ensuring that the defendant is being justly sentenced; it promotes accurate fact-finding; it facilitates the free discussion of governmental affairs; and it provides catharsis to the public (especially to those whom the defendant's conduct has harmed). *See id.* at 179–81.

Given those rationales for public access, the right of access to sentencing proceedings is "especially salient" where—as here—there was no trial but only a guilty plea. *Id.* at 177.

If a district court is considering closing a proceeding, it must generally provide all interested parties—including the public and the press—notice

and an opportunity to be heard. *Id.* at 181–82.[13] The district court has the discretion to determine what form that takes, e.g., docketing the motion to close the proceeding or merely noting on the docket that there is a motion to close *a* proceeding. *Id.* at 183. Similarly, written briefs may be a sufficient opportunity to be heard, depending on the circumstances.

Moreover, a court usually must make "specific, substantive findings . . . that closure is necessary to protect higher values and is narrowly tailored to serve such goals." *Id.* at 181. Such an explanation is a procedural safeguard of the First Amendment rights of the press and the public. *Id.* at 182–83. If the district court cannot adequately explain its reasoning without disclosing sealed information or information it seeks to protect by closing the proceeding, it may file its reasoning under seal. *See United States v. Sealed Search Warrants*, 868 F.3d 385, 397 (5th Cir. 2017). When the court does close a proceeding, it should protect the First Amendment right of access by making a transcript of the proceeding available within a reasonable time while safeguarding the interests that justified closing the proceeding in the first place. *Hearst*, 641 F.3d at 181.

Unlike our typical prior cases, this one involves only the partial closing of a procedure: Although part of Saman's sentencing was closed, part of it, including the actual imposition of the sentence, was public. On that basis, the United States analogizes the closed, *in camera* portion of Saman's sentencing to a bench conference or sidebar "from which the public and press may be denied contemporaneous access to protect substantial countervailing interests."

---

[13] We have not foreclosed the possibility that some circumstances may justify neither advance notice nor an opportunity to be heard. In that hypothetic situation, the court would still need to justify its decision "under the balancing test of *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)." *Hearst*, 641 F.3d at 183 n.15.

No. 23-20097

Although courts have substantial discretion in managing their cases and may hold *in camera* conferences, sidebars, and the like,[14] the United States pushes too far. Even assuming that a *proceeding* (such as the sentencing hearing) can be sliced into *substantive* components (such as discussions about cooperation), some of which are presumptively public and some of which are not, the district court failed to follow any advance or contemporaneous process at all. The docket reflects no motion to close, either public or sealed. The court gave no notice of the closing, whether in advance or contemporaneously. It provided no opportunity to be heard. It filed no explanation or justification, even under seal.

But even if the district court did not need to provide *any* advance or contemporaneous safeguard,[15] it should have implemented at least some meaningful subsequent one. The docket does not—even now—contain an entry for any *in camera* conference or closed proceeding on January 30, 2023. Had the parties not adverted to the *in camera* meeting during the public sentencing hearing, the public may not have become aware of its existence until almost two months later, when the (sealed) transcript was filed.[16]

---

[14] *See Globe Newspaper*, 457 U.S. at 609 n.25 ("Such discretion is consistent with the traditional authority of trial judges to conduct *in camera* conferences."); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 598 n.23 (1980) (Brennan, J., concurring in the judgment) ("Thus, when engaging in interchanges at the bench, the trial judge is not required to allow public or press intrusion upon the huddle. Nor does this opinion intimate that judges are restricted in their ability to conduct conferences in chambers, inasmuch as such conferences are distinct from trial proceedings."); *United States v. Edwards*, 823 F.2d 111, 116 (5th Cir. 1987) ("Our own court has explicitly acknowledged that bench conferences are outside public hearing and the protection of their privacy is generally within the court's discretion." (citing *United States v. Gurney*, 558 F.2d 1202, 1210 (5th Cir. 1977))).

[15] *See United States v. Valenti*, 987 F.2d 708, 713 (11th Cir. 1993) ("[W]e do not . . . require a trial court to articulate findings that a closed bench conference is necessary and narrowly tailored to preserve higher values *before* a closed bench conference occurs.").

[16] For similar reasons, we need not reach the United States' argument that this case

10

No. 23-20097

The opportunity to be heard after the closed proceedings was likewise lacking: Although intervenors requested a transcript of the closed proceedings in a response letter filed in February, little did they know that the parties had already opposed their January motion to unseal. After all, the opposition brief was filed under seal and docketed as a "Sealed Event."

Even where courts have recognized the broad discretion of district courts to hold closed proceedings, they have required *some* process at *some* point.[17]  Here, there was none at all. First Amendment protections may not be so completely flouted.

2.

With the procedural irregularity identified, we turn to remedies. They are limited somewhat by the fact that Saman's sentencing has already occurred. In similar cases, we typically reverse the denials of motions to open proceedings, orders to close proceedings, and the like. *See, e.g.*, *Hearst*, 641 F.3d at 186–87.

The problem is that we have nothing on the docket to reverse. There is no motion to close proceedings, no order granting any such motion, and no order—even under seal—to conduct any closed proceedings. The most we can do regarding the decision to close part of Saman's sentencing is to note the procedural deficiencies and stress to this district court and all our trial

---

is the as-yet hypothetical one contemplated by *Hearst* that required no advance notice or opportunity to be heard at all. 641 F.3d at 183–84. Even assuming that this case fell within that exception, the district court still had some obligation to provide some form of process before or after the closed hearing, whether by filing a sealed explanation and justification (even as a "Sealed Event"), docketing its decision to close a proceeding occurring at some indefinite point in the future, or something else tailored to the circumstances.

[17] *See, e.g.*, *Valenti*, 987 F.2d at 713–15 (allowing a district court to conduct *in camera* conferences without filing its justification for closing the proceedings but prohibiting it from maintaining two dockets—one public, one sealed—in parallel).

No. 23-20097

courts the importance of providing applicable procedural safeguards.

Intervenors' request that we unseal the transcript (or instruct the district court to do so) presents us with no direct avenue for relief, either. To the extent that intervenors invoke their common-law right to access the transcript as a judicial record, the argument folds into their general request that we reverse the denial of their motion to unseal, which covered all documents (including the transcript) related to Saman's sentencing. We address that claim below.

Insofar as intervenors base their request to unseal the transcript on their First Amendment right of access, it is true that the release of a transcript "within a reasonable time" can vindicate the constitutional values at risk where a proceeding is closed. *Press-Enter. Co. v. Superior Ct.* (*Press-Enter. I*), 464 U.S. 501, 512 (1984). In assessing the demands of the First Amendment, we determine what counts as a "reasonable time" case-by-case. *See United States v. Edwards*, 823 F.2d 111, 118–19 (5th Cir. 1987). And where a district court chooses not to release the transcript for the same reasons that it chose to close the underlying proceeding in the first place, the two analyses functionally collapse: The "reasonable time" becomes the time when keeping the transcript sealed is no longer a narrowly tailored way to protect specific compelling interests.

After our independent review of the sealed transcript, we conclude that its total sealing is still justified under that framework.[18] Although intervenors ardently emphasize that Saman's cooperation is public, it does not follow that the required documents must be unsealed, even with redactions. Compelling interests may still justify keeping the information under

---

[18] We do note, however, that even the entirely sealed transcript was not docketed until March 23, 2023—almost two months after the hearing.

wraps for the time being. Here, for example, there is a need to protect the safety of defendants and their families[19] and to maintain the integrity of governmental investigations.[20] Those interests do not necessarily subside as soon as the public is aware that a defendant is cooperating in some way with the United States.[21] And they are still salient in this case. Of course, circumstances can—and likely will, at some point—change.

We note finally that proper adherence to the correct procedures would not have changed the outcome. Although courts must assiduously abide by the safeguards meant to protect the rights of the public and press, on the facts here, there is no reasonable doubt about the propriety of the decision to close the proceeding and maintain the transcript under seal. Inasmuch as the denial of intervenors' motion reached their First Amendment claim to the transcript stemming from their right of access to the hearing itself, we affirm.

## B.

Intervenors also contend that the district court applied the wrong legal standards in denying their motion to unseal documents connected to Saman's sentencing, including the transcript of the closed portion of the sentencing hearing. They allege that the denial violated their First Amendment and common-law access rights.

Intervenors rest their contention on three grounds. *First*, the district court improperly applied a "presumption of secrecy" to the records instead

---

[19] *See Hearst*, 641 F.3d at 184–85; *accord United States v. Doe*, 870 F.3d 991, 998–99 (9th Cir. 2017); *United States v. Doe*, 962 F.3d 139, 147–48 (4th Cir. 2020) (collecting cases).

[20] *See Sealed Search Warrants*, 868 F.3d at 395 (discussing the interest in protecting the integrity of investigations in the context of pre-indictment warrant materials); *Hearst*, 641 F.3d at 185; *accord Doe*, 870 F.3d at 1000–01; *Valenti*, 987 F.2d 708 at 714.

[21] An analogous case may involve different but still compelling interests.

of presuming public access. *Second*, it did not consider the current circumstances of Saman's trial and premised its decision on the state of affairs at the time of the court's denial of intervenors' 2020 motion to unseal. *Third*, it did not properly consider less-restrictive alternatives to sealing the documents. Intervenors also aver that the district court committed a procedural error, depriving them of a meaningful opportunity to be heard on their motion by permitting the parties to file their opposition under seal and as a "Sealed Event" of unknown character.

Before we examine intervenors' claims in detail, we must describe the relevant standards and how—given the litigants' arguments in district court—they apply here. The press and the public have a presumptive general common-law right to "inspect and copy judicial records."[22] Those records include transcripts of court proceedings filed in the docket.[23]

On the other hand, although the First Amendment provides access to many criminal proceedings, this court has not generally extended that right to judicial records related to those proceedings. *See Hearst*, 641 F.3d at 176 (noting that numerous other circuits have so extended the right). But given that the litigants did not dispute in district court that the records intervenors seek fall within the First Amendment's ambit, for the purposes of this appeal we assume *arguendo* that the First Amendment applies to all the documents sought in connection with Saman's sentencing.[24]

---

[22] *SEC v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)).

[23] *Vantage Health Plan*, 913 F.3d at 451 ("Once a document is filed on the public record it becomes a 'judicial record.'" (citing *Van Waeyenberghe*, 990 F.2d at 849)); *Bradley ex rel. AJW v. Ackal*, 954 F.3d 216, 227 & n.8 (5th Cir. 2020) (noting in the context of a settlement that "sealed minutes are also a judicial record").

[24] Similarly, the litigants did not brief or otherwise make specific arguments about whether the common-law right of access attaches to each type of document sought. We

In addition to differing in scope, the First Amendment and common-law rights of access involve different strengths of presumption. The First Amendment presumption may be overcome "only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enter. II*, 478 U.S. at 9 (quoting *Press-Enter. I*, 464 U.S. at 510). The analysis is "case-by-case." *Hearst*, 641 F.3d at 181 (quoting *Globe Newspaper*, 457 U.S. at 609).

In contrast, we have not specified the weight of the common-law presumption, nor have we parsed it as creating a particular burden of proof. *See Bradley*, 954 F.3d at 225. But we have noted that the inquiry is "case-by-case"—like the First Amendment inquiry—and that courts must balance the public's right of access against other competing interests. *See Sealed Search Warrants*, 868 F.3d at 395. We have also instructed courts to exercise their discretion to seal "charily." *Fed. Sav. & Loan Ins. Corp. v. Blain*, 808 F.2d 395, 399 (5th Cir. 1987).

Our review of the district court's decision to seal also likely differs under the two standards. The common-law standard of review of sealing decisions is for abuse of discretion. *Vantage Health Plan*, 913 F.3d at 450–51. Though some circuits appear to apply the abuse-of-discretion standard to the ultimate decision to seal or unseal in the First Amendment context as well,[25] others employ an independent and more searching review, even as to factual findings.[26] We assume *arguendo* that the latter, less deferential standard

_____

therefore assume *arguendo* that the common-law right of access attaches to each of the records intervenors seek.

[25] *See Flynt v. Lombardi*, 885 F.3d 508, 511 (8th Cir. 2018); *United States v. Carpenter*, 923 F.3d 1172, 1178 (9th Cir. 2019).

[26] *See United States v. Erie Cnty.*, 763 F.3d 235, 238 (2d Cir. 2014); *N. Jersey Media Grp. Inc v. United States*, 836 F.3d 421, 428 n.10 (3d Cir. 2016).

No. 23-20097

applies (within our broader assumption, also *arguendo*, that the First Amendment attaches to all the relevant documents).

In sum, and comparing the common-law right with the one guaranteed by the First Amendment, the latter is stronger with respect to a given record than is the right at common law. *See Doe*, 962 F.3d at 145 ("The public's right to access documents under the First Amendment is narrower in scope but stronger in force."). Our review of the district court's decisions in a First Amendment context is also less deferential than in a common-law context. The upshot is that if we uphold the denial of intervenors' motion to unseal under the more stringent First Amendment standard, we uphold it *a fortiori* under the common-law standard.

At common law,[27] courts must make detailed, clear, and specific findings when sealing a record to which there is a presumptive right of access. *See Sealed Search Warrants*, 868 F.3d at 397. "While the district court need not conduct an exhaustive assessment, it must generally articulate its reasons to support sealing the [documents] with a level of detail that will allow for this Court's review." *Id.*; *see also United States v. Holy Land Found. for Relief & Dev.*, 624 F.3d 685, 690 (5th Cir. 2010). The degree of specificity required is case-specific. *Sealed Search Warrants*, 868 F.3d at 397.[28]

---

[27] And, we assume, under the First Amendment as well. Given that our circuit has not extended the First Amendment right of access to documents connected to criminal proceedings generally, it has understandably not set down a particular process courts must follow when deciding whether to seal information. Other circuits have noted that although the First Amendment and common-law rights of access are not coterminous (e.g., with respect to their standard of review), overlap in their application is "understandable" given that the First Amendment access jurisprudence "has been derived in large measure" from the common-law access jurisprudence. *In re Providence J. Co.*, 293 F.3d 1, 10 (1st Cir. 2002). We accordingly find the exacting nature of the common-law line-by-line approach suited to First Amendment analysis.

[28] In rare situations, the reasons for sealing may be so obvious that a court need not

16

No. 23-20097

The court's analysis must be "document-by-document" and "line-by-line." *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 521 (5th Cir. 2022) (quoting *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 419 (5th Cir. 2021)). Moreover, the court must carefully balance the right of access against countervailing interests.[29] *Bradley*, 954 F.3d at 227–28. If identifying those interests would divulge the very information that should remain sealed, district courts may file their statements of reasons under seal. *Sealed Search Warrants*, 868 F.3d at 397 n.5 (citing *Balt. Sun Co. v. Goetz*, 886 F.2d 60, 65 (4th Cir. 1989)).

Turning to intervenors' first two points, although the district court's denial of intervenors' motion is brief, it does not erroneously presume secrecy or fail to consider the circumstances at the time. Intervenors emphasize the court's statement that it found "no good reason to set aside Judge Gilmore's order." They contort that statement into an admission by the court that (i) it did not presume public access, and (ii) it considered the status of the case at the time of Judge Gilmore's order rather than at the time the motion was denied.

We find that reading strained and that the much more plausible reading is also the more charitable one. The order identified the interests it found compelling—the safety of the defendants and their families[30] and the integ-

---

provide specific findings. But such instances have involved the sealing of jury information in highly publicized cases, especially where there have been threats against the jurors by the press or the defendants. *See United States v. Brown*, 250 F.3d 907, 919–20 (5th Cir. 2001); *United States v. Harrelson*, 713 F.2d 1114, 1117 (5th Cir. 1983). This case contains no such indicia of obviousness.

[29] As noted *supra*, the presumption against sealing is at least as strong (and likely stronger) in the First Amendment context as in the common-law context.

[30] Admittedly, at different points, the order and the quoted section of Judge Gilmore's order variously refer to Saman's safety, the safety of his family, and the safety of the other defendants and their families. Because the district court specifically found that

17

rity of ongoing investigations—and also found that they outweighed the press's and public's First Amendment right of access.

As to the continued salience of those compelling interests, we read the order to adopt Judge Gilmore's reasoning precisely because it was still applicable. Judge Gilmore had found a "compelling governmental interest" in keeping some information sealed based on the circumstances in 2020. We do not interpret the order as failing to consider whether the *status quo* has changed. Instead, Judge Hanen found that the reasoning in Judge Gilmore's order was still relevant and apposite given the circumstances in 2023. Moreover, the order recognized some change in the *status quo* given that it acknowledged Saman's cooperation with the United States and quoted parts of Judge Gilmore's order, which had been under seal previously.

Intervenors' third point is that the district court failed properly to consider alternatives to complete sealing. The court rejected "the partial remedy of redaction," finding "that appropriate redactions in this instance would essentially destroy any value the documents have and therefore would undermine the very purpose behind [intervenors'] request." Intervenors assert that that explanation was cursory and inadequate, revealing that the court had failed to conduct a line-by-line analysis. The logically necessary assumption underpinning that argument is that the compelling interests "could be accommodated by the less-restrictive alternative of applying targeted redactions," largely because of the now-public fact of Saman's cooperation—a claim sounding more in the application of law to fact than in pure law.

At any rate, we do not read the order as applying an erroneous legal

_____

all the requested records implicated the safety of both the defendants and their families, we view that interest as the most precisely formulated one.

standard.  The court expressly considered simple redaction, rejected that option, and explained why, noting that it had reviewed "each document" at issue.  Those are the requisite steps under our caselaw.  Nor do we find that the court applied that standard incorrectly.  Although redaction is often practicable and appropriate as the least restrictive means of safeguarding sensitive information, it is not always so.[31]  Our review of the sealed information corroborates the district court's reasoning, and the decision to seal the documents completely rather than redact them partially does not fall outside the bounds of the permissible application of the law to the facts, even under a less deferential standard.  We come to this conclusion while fully recognizing, as intervenors have frequently stated, that the fact of Saman's cooperation is now public knowledge.  But, as we have explained, compelling interests persist in this case despite that public knowledge.

In sum, the order denying intervenors' motion to unseal included sparse detail when read in isolation, but it did contain specific, substantive findings sufficient to permit our review, given the facts.  *See Hearst*, 641 F.3d at 181.  Although its articulation of the governing legal principles could have been more detailed, the court applied the proper legal standards.  And after an independent review of the record, we conclude that it did not reversibly err in applying those standards to the facts.  The interests it identified are compelling and implicated by the sealed information.  Those interests may abate in the future, but for now, they remain salient enough to justify the seal-

---

[31] *See, e.g.*, *United States v. Index Newspapers LLC*, 766 F.3d 1072, 1095 (9th Cir. 2014) ("[I]f the record is sufficiently voluminous, the consequences of disclosure sufficiently grave or the risks of accidental disclosure sufficiently great, the balance may well tip in favor of keeping records sealed.  These considerations are not exhaustive . . . ."); *In re Application of Newsday, Inc.*, 895 F.2d 74, 80 (2d Cir. 1990) (citations omitted) (noting that courts have the "authority" to either redact a record "to the point of rendering it meaningless" or else "not to release it at all").

ing of the documents at issue, including the transcript of the sealed sentencing proceeding. Finally, the court properly considered the alternative of redaction and permissibly found that it was inappropriate.

Intervenors also advance a procedural argument that they were denied a meaningful opportunity to be heard before the court denied their motion because the court allowed the parties to file their opposition to the motion under seal and as a "Sealed Event." As to the impropriety of keeping the mere existence of the opposition from the public, intervenors are correct. We cannot discern—and the district court did not provide—any reason why intervenors had to be shielded from the bare fact that the parties opposed their motion. Even the United States avers that "[d]ocketing the joint opposition as a 'sealed event' may well have been inadvisable." Our precedent, which does allow for partial or total sealing of briefs, including briefs that are themselves related to sealing, still contemplates that the briefs' existence at least is noted on the public docket.[32] The district court therefore erred in allowing the parties to file their opposition as a "Sealed Event," especially without any explanation or justification.

But, despite that error, intervenors were not so deprived of a meaningful opportunity to be heard as to justify reversal. First, they had notice of the general reasons that the parties would likely proffer to keep the information under seal. The documents unsealed after the court granted intervenors' 2020 motion contained passages identifying the interests that the parties viewed as compelling enough to justify sealing. A redacted proposed order,

---

[32] *Hearst*, 641 F.3d at 185 ("[T]he district court could have simply given notice that the government had filed a sealed motion to close the upcoming sentencing proceeding . . . . Anyone who wanted to see the government's sealed motion before filing an opposing motion could also have filed a motion to do so, which the district court could have granted or denied in the exercise of its sound discretion.").

for example, discusses the "substantial likelihood of imminent danger to [Saman] and his family" and an "ongoing criminal investigation." The intervenors' primary justification for unsealing the documents was that Saman's cooperation was the United States is now public. That cooperation engendered the parties' concerns in 2020 and, ultimately, the compelling interests that the district court specified in its denial of intervenors' motion in 2023.

Contrast, for example, *In re Capital Cities/ABC, Inc.'s Application for Access to Sealed Transcripts*, 913 F.2d 89 (3d Cir. 1990), which intervenors rely on. There, the entity seeking access to sealed documents had "*absolutely no information* concerning their subject matter," and it likewise "had *no information* concerning the government interests" involved. *Id.* at 95 (emphases added). Here, intervenors were both aware of the general subject matter of the sealed documents (and regardless limited their request to documents related to Saman's sentencing proceedings) and had some sense, even if general, of the governmental interests in the case.

Second, after our own review of the record, and considering the compelling interests identified by the district court, we conclude that the procedural error regarding the opposition brief made no difference to the ultimate disposition of intervenors' motion. Even assuming that the court had published the brief with redactions, much of the opposition brief unquestionably would have remained under seal, including virtually all of the material legal and factual substance. *See Hearst*, 641 F.3d at 185 (stating that courts have discretion to deny motions to unseal briefs).

In their reply brief, intervenors note potentially relevant arguments gleaned from the parties' response briefs. For example, intervenors allege that if they "had known . . . that the [United States'] case for secrecy rested on a distinction between official acknowledgments and other public reports, [intervenors] could have highlighted that other circuits have rejected that

theory." That is perhaps true, but there is no doubt that that argument (and others derived from the parties' unredacted briefing on appeal) would not have prevailed. Again, even if the court had unsealed the opposition brief as much as possible while still safeguarding the interests it identified in its ultimate order, the outcome would not have changed. The arguments that unquestionably would have remained substantially or completely under seal would still have been dispositive.

We therefore affirm the denial of intervenors' motion to unseal despite the procedural error in not publicly docketing the opposition brief.

\* \* \* \* \*

The denial of intervenors' motion to unseal documents related to Saman Ahsani's sentencing is AFFIRMED. This panel retains jurisdiction over appeals from decisions on any re-urged or subsequent motions related to the same.