IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 25, 2025[1]

**STATE OF TENNESSEE v. RANDALL C. JOHNSON**

**IN RE: NASHVILLE BANNER**

**Extraordinary Appeal by Permission from the Court of Criminal Appeals
Criminal Court for Davidson County
No. 2021-C-1591    Angelita Dalton, Judge**

_____

**No. M2024-00959-SC-R10-CO**

_____

This appeal addresses sealing judicial records. Three filings were sealed without a written order. The presiding judge later recused herself and the matter was transferred. Then *The Nashville Banner* intervened to unseal the records. The trial court denied the motion to unseal. The appellate court denied the Rule 10 appeal and then denied the petition for writ of certiorari. We reverse. Rule 10 interlocutory review is available to media intervenors when judicial proceedings are closed or documents are sealed. Sealing judicial records protected by the First Amendment right of access requires entry of a written order after finding that a compelling interest necessitates sealing. Any such order must be narrowly tailored and seal only those judicial records, or the portions thereof, necessary to protect the identified interest. After conducting a de novo review, we do not find a compelling interest necessitating sealing. The documents shall be made available to the public.

**Tenn. R. App. P. 10 Extraordinary Appeal by Permission; Judgment of the Court of Criminal Appeals Reversed**

MARY L. WAGNER, J., delivered the opinion of the Court, in which SARAH K. CAMPBELL and DWIGHT E. TARWATER, JJ., joined. JEFFREY S. BIVINS, C.J., filed a separate opinion concurring in part and dissenting in part. HOLLY KIRBY, J., with whom JEFFREY S. BIVINS, C.J., joins, filed a separate opinion concurring in part and dissenting in part.

Daniel A. Horwitz and Sarah L. Martin, Nashville, Tennessee, for the appellant, The Nashville Banner

_____

[1] *Nashville Banner* filed a motion to submit this appeal for decision on the record and briefs. We granted that motion on June 25, 2025.

Jonathan Skrmetti, Attorney General and Reporter; J. Matthew Rice, Solicitor General; Edwin Alan Groves, Jr., Assistant Attorney General for the appellee, State of Tennessee

Melanie R. Bean, Lebanon, Tennessee, and Bernard F. McEvoy, Nashville, Tennessee, for the defendant, Randall C. Johnson

Paul R. McAdoo, Brentwood, Tennessee, for the amici curiae, Reporters Committee for Freedom of the Press et al.

**OPINION**

## I.  FACTUAL AND PROCEDURAL BACKGROUND

This appeal centers on the sealing of documents filed with the Davidson County Criminal Court.  On April 8, 2024, the judge presiding over a criminal prosecution recused herself, and the case was transferred to a new trial court.  A few days later, the Appellant, *The Nashville Banner* ("*Nashville Banner*"), learned from the Criminal Court Clerk's Office for Davidson County that several documents had been filed in this matter before the recusal, and then sealed.  These documents did not appear on the court's publicly available docket.  The Criminal Court Clerk's Office disclosed that the following three documents were filed on March 25, 2024:

> (1) John Doe's Motion for Disqualification of the Trial Judge and For Continuance;
> (2) The Affidavit of John Doe In Support of John Doe's Motion for Disqualification and to Continue; and
> (3) The Affidavit of Jane Doe In Support of John Doe's Motion for Disqualification and to Continue.

At no time had an order been entered requiring a seal.  The motion for disqualification was brought pursuant to Tennessee Supreme Court Rule 10B and included a notation of "Filed Under Seal" that appears to have been inserted by the preparer of that document.  As discussed herein, such notation or request is not an effective mechanism to seal a judicial record.

On April 24, 2024, *Nashville Banner* moved to intervene and unseal those three documents.  *Nashville Banner* argued that there is a public right to examine documents in judicial proceedings, and that third parties, including the media, are allowed to intervene to obtain access to them.  Further, it argued that these documents should never have been sealed without a written order that included findings justifying the seal.  Accordingly, *Nashville Banner* requested that the documents be unsealed.

The trial court permitted *Nashville Banner* to intervene but denied the motion to unseal. Although the trial court recognized that *Nashville Banner* established an interest in reporting on matters of public concern, it held that the documents "should remain under seal" because "more compelling interests [were] at stake." The trial court found that "public disclosure" of these documents "would likely result in the publication of claims that (a) are currently insufficiently supported, (b) would annoy, embarrass, oppress, or create undue burdens for involved persons, (c) deny involved persons their rights to substantive, procedural, and administrative due process, and (d) delay court proceedings." The trial court held that the three documents "shall remain under seal subject to appellate review." Simultaneously, the trial court entered a separate order[2] holding that, pursuant to Tennessee Supreme Court Rules 34(2)(C)(ii), (vii), and (viii), the documents should be treated as confidential and not be open for public inspection. The second order also required the parties to refrain from disseminating the documents and to seek permission from the court prior to any disclosure. This order concluded by holding that the documents "shall remain under seal."[3]

Shortly thereafter, *Nashville Banner* petitioned for a writ of certiorari or, alternatively, extraordinary appeal under Tennessee Rule of Appellate Procedure 10. The Court of Criminal Appeals denied the application for extraordinary appeal, finding that Rule 10(e) limits extraordinary appeals in criminal cases to only the State and Defendant. *In re Nashville Banner*, No. M2024-00959-CCA-WR-CO, at *3 (Tenn. Crim. App. Aug. 15, 2024), *perm. app. granted*, (Tenn. Nov. 21, 2024). The court then denied the petition for writ of certiorari because there was no "plain and palpable abuse of discretion" and that was the only applicable basis for review. *Id.* at *3–5.

*Nashville Banner* then filed an application for permission to appeal under Tennessee Rule of Appellate Procedure 11(a) or, alternatively, an application for extraordinary appeal pursuant to Tennessee Rule of Appellate Procedure 10(a). We granted this application to address media intervention under Rule 10 and the sealing of judicial records.

## II.    ANALYSIS

### A.  Media Intervenors Under Rule 10

In addition to a writ of certiorari, *Nashville Banner* sought an interlocutory appeal pursuant to Tennessee Rule of Appellate Procedure 10. These avenues of relief may arise in similar situations but are reviewed under different standards.

---

[2] In the caption and footer, the order is labeled "Order to Seal Records."

[3] The record reflects that the second order was not served on *Nashville Banner*. Instead, *Nashville Banner* only received a copy of this order upon the State's filing it with the Court of Criminal Appeals.

A writ of certiorari is an extraordinary remedy that reviews whether a lower court has "(1) exceeded its jurisdiction, (2) followed an unlawful procedure, (3) acted illegally, arbitrarily, or fraudulently, or (4) acted without material evidence to support its decision." *Heyne v. Metro. Nash. Bd. of Pub. Educ.*, 380 S.W.3d 715, 729 (Tenn. 2012) (citing *Harding Acad. v. Metro. Gov't of Nash. & Davidson Cnty.*, 222 S.W.3d 359, 363 (Tenn. 2007)). The scope of review for a writ of certiorari is very limited and does not authorize redetermining findings, evaluating the intrinsic correctness of a decision, reweighing evidence, or substituting the judgment of the entity whose decision is being reviewed. *Id.* (citations omitted). Some situations where a writ of certiorari is appropriate include when

> the ruling fails to proceed according to the essential requirements of the law, the ruling is tantamount to the denial of a party's day in court, the trial court's action is without legal authority, the action of the trial court constitutes a plain and palpable abuse of discretion, or either party has lost a right or interest that may never be recaptured.

*State v. McKim*, 215 S.W.3d 781, 791 (Tenn. 2007) (citing *State v. Willoughby*, 594 S.W.2d 388, 392 (Tenn. 1980)). While this Court has often repeated this same set of examples, we make plain that this list is illustrative and not exhaustive. *See State v. Johnson*, 569 S.W.2d 808, 815 (Tenn. 1978).

Relatedly, a Rule 10 extraordinary appeal is permissible whenever a writ of certiorari would also be appropriate. *McKim*, 215 S.W.3d at 791 (first citing Tenn. R. App. P. 10(a); and then citing *Willoughby*, 594 S.W.2d at 392). However, if the application is granted, "[i]ssues raised by an interlocutory or extraordinary appeal . . . are decided in the same manner as if the issues had been raised in an appeal as of right." *State v. Strode*, 232 S.W.3d 1, 8 (Tenn. 2007) (quoting *State v. Moore*, 775 S.W.2d 372, 374 (Tenn. Crim. App. 1989)).

Relying on subsection (e) of Rule 10, the Court of Criminal Appeals found that review was unavailable to *Nashville Banner* and must be denied. Subsection (e) provides: "**Appeal in Criminal Actions.** Permission to appeal under this rule may be sought by the state and defendant in criminal actions." Tenn. R. App. P. 10(e).

The State now concedes that this was error. This Court has consistently held that Rule 10 appellate review is available to media intervenors in criminal matters. *See State v. Drake*, 701 S.W.2d 604, 608–09 (Tenn. 1985); *State v. James*, 902 S.W.2d 911, 912 (Tenn. 1995); *see also State v. Montgomery*, 929 S.W.2d 409, 410 (Tenn. Crim. App. 1996). In *State v. Drake*, we specified that appeal under this rule is available to intervening media parties opposing closure of judicial proceedings, because error in closure orders may mean "los[ing] a right or interest that may never be recaptured." 701 S.W.2d at 608–09 (citing *Willoughby*, 594 S.W.2d at 392). While these cases have traditionally involved the closure of judicial proceedings, the same analysis applies to the sealing of judicial records.

*See In re NHC—Nash. Fire Litig.*, 293 S.W.3d 547, 560 (Tenn. Ct. App. 2008) (first citing *Knoxville News-Sentinel v. Huskey*, 982 S.W.2d 359, 362–63 (Tenn. Crim. App. 1998); and then citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)). Consequently, we agree with *Nashville Banner* that Rule 10 review was available and should have been granted. Without this appeal, *Nashville Banner*'s right to access these documents will be lost and may never be recaptured. *See Willoughby*, 594 S.W.2d at 392 (citing *Johnson*, 569 S.W.2d at 815). Accordingly, we proceed with review on the merits.

## B. Sealing Judicial Records

### i. Judicial Seal Versus Protective Order

Documents filed with the trial court clerk may be protected from disclosure by statute, rule, or court order. Tenn. Sup. Ct. R. 34. Not all court orders are the same. Orders to seal judicial records differ from protective orders issued pursuant to Tennessee Rule of Civil Procedure Rule 26.03. Parties and courts often conflate the two. *See Lipman v. Budish*, 974 F.3d 726, 753 (6th Cir. 2020). Rule 26 protective orders relate to discovery and are designed to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense." Tenn. R. Civ. P. 26.03. Rule 26.03 allows courts to make any order necessary to protect a party during the discovery process, including but not limited to, preventing dissemination of information or materials. The standard for granting a protective order under Rule 26.03 is good cause. Sealing, on the other hand, implicates the public's right to access courts. A sealed record is "[a] record to which access is restricted by court order."[4] *Record*, Black's Law Dictionary (12th ed. 2024). This opinion addresses only the standard for sealing a motion for disqualification and its supporting documents by court order. Our holding today does not affect the good cause standard for protective orders related to civil pre-trial discovery. *See* Tenn. R. Civ. P. 26.03.

### ii. The Presumption of Openness

Tennessee has long recognized that judicial proceedings are presumptively open. *See Drake*, 701 S.W.2d at 607 (citing *Waller v. Georgia*, 467 U.S. 39, 44–45 (1984)). We reiterate that the presumption of openness extends not only to court proceedings, but also to judicial records. *In Re NHC*, 293 S.W.2d at 560 (first citing *Huskey*, 982 S.W.2d at 362–63; and then citing *Nixon*, 435 U.S. at 597).

The presumption of openness is long rooted in the history of our Nation and State, originating from common law traditions that predate the Federal Constitution. *See Ballard*

---

[4] Traditionally, courts have sealed judicial records by keeping them "in an opaque covering, taped shut, in the court clerk's file, and designated as 'under seal.'" *In re NHC*, 293 S.W.3d at 561 n.7. More courts are moving towards electronic filing systems. These systems increase public access to judicial records and provide tools for narrowly tailoring judicial seals.

*v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). Since then, the right to access judicial proceedings and records has continued to enjoy strong protection under both the Federal Constitution and the Tennessee Constitution. *See id.*; *Waller*, 467 U.S. at 44–45 (first citing *Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596, 606–07 (1982); and then citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580–81 (1980)); *In re NHC*, 293 S.W.3d at 560 (citing Tenn. Const. art. I, § 17). This presumption strengthens public confidence in our judicial system. *See Kocher v. Bearden*, 546 S.W.3d 78, 86 (Tenn. Ct. App. 2017) (quoting *Warwick v. Jenkins, Habenicht & Woods, PLLC*, No. E2012-00514-COA-R3-CV, 2013 WL 1788532, at *1 n.1 (Tenn. Ct. App. Apr. 25, 2013)). Openness "serves to (1) promote community respect for the rule of law, (2) provide a check on the activities of judges and litigants, and (3) foster more accurate fact finding." *Ballard*, 924 S.W.2d at 661 (quoting *Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994) (citing *Richmond Newspapers*, 448 U.S. at 571)).

The presumption of openness is qualified, however, and not absolute. "Every court has supervisory power over its own records and files . . . ." *Nixon*, 435 U.S. at 598. "Courts have inherent power to seal their records when privacy interests outweigh the public's right to know." *Huskey*, 982 S.W.2d at 362 n.1 (citing *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 474 (6th Cir. 1983)). Accordingly, courts can seal records upon motion of a party or *sua sponte*. *See In re Est. of Thompson*, 636 S.W.3d 1, 12 (Tenn. Ct. App. 2021) (citing *Bottorff v. Bottorff*, No. M2019-00676-COA-R3-CV, 2020 WL 2764414, at *8 (Tenn. Ct. App. May 27, 2020)); *see also United States v. Pickard*, 733 F.3d 1297, 1300 (10th Cir. 2013) ("A court has authority to seal documents before it, based upon the court's inherent supervisory authority over its own files and records." (citing *Nixon*, 435 U.S. at 598)); *Brennan v. Opus Bank*, 796 F.3d 1125, 1134 (9th Cir. 2015) (same).

But a court's inherent power cannot be exercised without restraint. *In re Knoxville News-Sentinel*, 723 F.2d at 473. Courts may not seal a judicial record "simply because a party requests this to be done." *Kocher*, 546 S.W.3d at 86 (quoting *Warwick*, 2013 WL 1788532, at *1 n.1). Nor may court clerks. Court clerks "are created as part of the judicial branch of the government." *Jordan v. Knox Cnty.*, 213 S.W.3d 751, 782 (Tenn. 2007). Court clerks have no authority to seal records except as directed by the judges of their respective courts. *See* Tenn. Code Ann. §§ 18-1-105(a)(3), -201 (2021); *see also In re Lineweaver*, 343 S.W.3d 401, 413 (Tenn. Ct. App. 2010) (explaining that a court's inherent supervisory authority over its files includes overseeing the clerk's maintenance of those records).

### iii.     The Interest Required to Seal

When presented with an issue regarding sealing, the reviewing court should first determine the law that protects the right of access and the type of document sought. Both dictate the standard to be considered and the interest required to seal. *See, e.g.*, *In re ESML Holdings Inc.*, 135 F.4th 80, 94 (3d Cir. 2025); *Doe v. Pub. Citizen*, 749 F.3d 246, 266 (4th

Cir. 2014). The right to access may stem from the First Amendment of the Federal Constitution, the Open Courts provision of the Tennessee Constitution, or the common law. *Contrast Press-Enter. Co. v. Superior Ct. of Cal. for Riverside Cnty.*, 478 U.S. 1, 11–13 (1986) (finding that the First Amendment provided qualified access to the transcript after trial court closed preliminary hearing because these proceedings were historically open to the public and the public played a significant positive role), *with In re NHC*, 293 S.W.3d at 560 (observing that "the courts shall be open" under Article I, Section 17 of the Tennessee Constitution), *and Nixon*, 435 U.S. at 597 (recognizing "a general right to inspect and copy public records and documents"). How the right of access applies may differ depending upon the nature of the desired documents. For example, the First Amendment does not preclude courts from entering Rule 26 protective orders limiting dissemination of pre-trial civil discovery under a good cause standard. *Ballard*, 924 S.W.2d at 662 n.6; *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 252 (4th Cir. 1988) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 37 (1984)); *see also United States v. Kravetz*, 706 F.3d 47, 55 (1st Cir. 2013) ("[T]he public has no common law or constitutional right of access to materials that are gained through civil discovery but neither introduced as evidence at trial nor submitted to the court as documentation in support of motions or trial papers.").

This Court has not precisely defined which judicial records are protected by the First Amendment right of access.[5] We need not do so today.

Neither party disputes that the First Amendment right of access attaches to the judicial records at issue—a motion for disqualification and supporting documents brought pursuant to Tennessee Supreme Court Rule 10B. We agree that there is a First Amendment right of access to documents filed in connection with judicial disqualification proceedings. *See Application of Nat'l Broad. Co.*, 828 F.2d 340, 345 (6th Cir. 1987). "The First Amendment right of access is, in part, founded on the societal interests in public awareness of, and its understanding and confidence in, the judicial system." *Id.* at 344–45 (quoting *United States v. Chagra*, 701 F.2d 354, 363 (5th Cir. 1983)) (citation modified). When the public is informed about a judge's ability to preside over a case, that strengthens understanding and boosts confidence in the judicial process.

The interest needed to seal judicial records has not been clearly defined in Tennessee. The interest required to overcome the presumption of openness has been described in various contexts as "good cause," an "overriding" interest, a "competing" interest, and a "compelling reason." *See, e.g.*, *Ballard*, 924 S.W.2d at 658–60; *Kocher*, 546 S.W.3d at 86 (citing *Baugh v. United Parcel Serv., Inc.*, No. M2012-00197-COA-R3-CV, 2012 WL 6697384, at *7 (Tenn. Ct. App. Dec. 21, 2012)); *In re NHC*, 293 S.W.3d at

---

[5] Whether a certain document is a judicial record protected by the First Amendment is a distinct question from whether the document is a "court record" for purposes of Tennessee Supreme Court Rule 34 or a "public record" for purposes of the Tennessee Public Records Act. *See Ballard*, 924 S.W.2d at 662 (citing Tenn. Code Ann. § 10-7-503(a)).

560 (quoting *Drake*, 701 S.W.2d at 607–08); *Huskey*, 982 S.W.2d at 363 (citing *Drake*, 701 S.W.2d at 607). We clarify today that to seal judicial records protected by the First Amendment right of access, the interest at stake must be compelling. *See In re NHC*, 293 S.W.3d at 567. To be clear, the approach adopted herein is limited to the First Amendment right to access motions for disqualification or similar motions brought pursuant to Tennessee Supreme Court Rule 10B.[6]

To be "compelling," there must be "only one possible resolution." *Compel*, Black's Law Dictionary (12th ed. 2024); *see also Paxton v. City of Dallas*, 509 S.W.3d 247, 258 (Tex. 2017) ("[T]he term 'compelling' connotes urgency, forcefulness, and significantly demanding concerns."). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning" will not satisfy this standard. *Ballard*, 924 S.W.2d at 658 (quoting *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1122 (3d Cir. 1986)). "Mere conclusory allegations are insufficient." *Id.*

In determining if the interest is "compelling," courts must weigh the presumption of openness against the potential interest in need of protection. In *Ballard*, this Court adopted factors to evaluate the "good cause" standard for protective orders under Rule 26. 924 S.W.2d at 658–60. While good cause is a different standard from compelling interest, the factors discussed in *Ballard* still provide the courts with useful guidance for "evaluat[ing] the competing considerations in light of the facts of each individual case." *Id.* at 659 (citing Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 Harv. L. Rev. 427, 492 (1991)). Some factors which may support the finding of a compelling interest and weigh in favor of sealing include if: "(1) the litigation involves private litigants; (2) the litigation concerns matters of private concern or of little legitimate public interest; and (3) disclosure would result in serious embarrassment or other specific harm." *Id.* at 658–59 (first citing *Seattle Times*, 467 U.S. at 34–36; and then citing *Cipollone*, 785 F.2d at 1121). Some factors which do not support the finding of a compelling interest and weigh against sealing include if: "(1) the party benefitting from the [seal] is a public entity or official; (2) the information sought to be sealed relates to a matter of public concern; and (3) the information sought to be sealed is relevant to other litigation and sharing it would promote fairness and efficiency." *Id.* at 658 (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994)). No single factor is dispositive, and courts need not consider any specific factor in their analysis. *Id.* at 659. Critically, consulting the *Ballard* factors in this context does not change the required analysis wherein courts must identify and describe the compelling interest that outweighs the constitutional right. *Cf. In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 676 (3d Cir. 2019) (finding that trial court did not abuse its discretion or change the required standard by considering factors from a different test as guidance).

---

[6] Tennessee Supreme Court Rule 10B provides the procedures that "shall be employed to determine whether a judge should preside over a case." Tenn. Sup. Ct. R. 10B. It includes motions seeking disqualification, recusal, or a determination of a judge's constitutional or statutory incompetence. Tenn. Sup. Ct. R. 10B § 1.01.

If a court identifies a compelling interest, any seal to protect that interest must be "narrowly tailored." *See Drake*, 701 S.W.2d at 607 (quoting *Waller*, 467 U.S. at 45 (quoting *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501 (1984)).

A compelling interest standard is consistent with federal caselaw applying the First Amendment right of access in other contexts. *See, e.g.*, *United States ex rel. Oberg v. Nelnet, Inc.*, 105 F.4th 161, 173–74 (4th Cir. 2024) (remanding to determine if compelling interest existed to justify sealing summary judgment motion and related documents); *Civ. Beat L. Ctr. for Pub. Int., Inc. v. Maile*, 117 F.4th 1200, 1212 (9th Cir. 2024) (state court rule could not require sealing all medical and health records in a case without identifying justificatory compelling interests); *United States v. Ahsani*, 76 F.4th 441, 450 (5th Cir. 2023) (keeping sentencing transcript sealed to protect compelling interests in defendants' safety and integrity of government investigation). As the United States Supreme Court has explained, a "compelling governmental interest" is required to close court proceedings in light of the First Amendment's presumption of openness. *Globe Newspaper*, 448 U.S. at 606–07; *see generally Press-Enterprise*, 464 U.S. 501. In fact, we have cited this same line of cases in our open courts jurisprudence. *See Drake*, 701 S.W.2d at 607–08 (citations omitted). Indeed, the parties themselves do not dispute that the interest must be compelling.

In sum, to seal a motion for disqualification and its supporting documents, a court must make a finding that specifies and describes a compelling interest necessitating closure. *See Drake*, 701 S.W.2d at 607–08 (quoting *Waller*, 467 U.S. at 45). Not only should the court find a compelling interest exists, but it must "articulate the specific facts upon which [it] has based a finding that closure is essential to preserve the . . . interest." *Id.* at 608. The court must then provide instructions to the clerk that narrowly tailors any restriction to seal only what is necessary to protect the identified interest. *Id.* at 607–08. These findings and instructions must be set forth in a written order. *See id.* That written order must enable an appellate court to determine whether the seal was properly ordered given the compelling interest identified, considering the reasonable alternatives to sealing that the court rejected.[7] *See Kocher*, 546 S.W.3d at 87 (quoting *In re NHC*, 293 S.W.3d at 560).

The dissenting justices agree that the documents here should be unsealed, but they disagree with our adoption of a compelling interest standard. They would instead unseal

---

[7] "In appropriate cases, the trial court may deem it necessary to seal that portion of the record which contains its findings, for in some circumstances, the court's open articulation of its findings would compromise the protective order." *Ballard*, 924 S.W.2d at 659 (citing *Pansy*, 23 F.3d at 789). This should be done sparingly as it is important that litigation remain open and accessible to maintain public confidence in our judicial system. *See Kocher*, 546 S.W.3d at 86 (quoting *Warwick*, 2013 WL 1788532, at *1 n.1).

the documents because, in their view, the *Ballard* good-cause standard was not satisfied.[8] Justice Kirby contends that our adoption of the compelling interest standard is imprudent because we lack "strong adversarial arguments" from the parties regarding the correct standard for sealing. But even if we could resolve the issue presented—whether the documents should be sealed—by assuming that the good-cause standard applies, we believe the better course is to identify and apply the correct standard for unsealing. *See State v. Booker*, 656 S.W.3d 49, 67 (Tenn. 2022) ("This Court's duty is to apply the law and, when necessary, decide whether a law is constitutional. By interpreting state and federal constitutions with reasoned opinions, courts are carrying out the quintessential judicial function to 'say what the law is.'" (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803))). While we must limit our review to the issues presented by the parties, we "retain[] the independent power to identify and apply the proper construction of governing law." *State v. Gevedon*, 671 S.W.3d 537, 546 n.2 (Tenn. 2023) (Campbell, J., concurring in part) (quoting *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991)).

To be sure, the manner in which this Court resolves an issue is a prudential matter left to the Court's discretion that should be decided based on the circumstances of a given case. For several reasons, however, the circumstances here persuade us that we should clarify the correct standard for sealing these documents. First, to the extent there was a lack of adversarial arguments about the sealing standard, that was because the parties *agreed* that the compelling interest standard should apply—although the State did not concede that the documents should be unsealed. Second, the choice of standard here implicates significant constitutional interests. While we cannot answer all the questions that may arise in future cases, clarifying the standard for the category of documents at issue here will help ensure that those constitutional interests are given appropriate weight going forward. We find it appropriate to answer the question and provide a workable framework for future cases. Finally, the documents here—a motion seeking the disqualification of a judge and supporting evidentiary materials—uniquely affect public trust and confidence in our legal system. Any suggestions that such documents may be sealed merely for good cause would give short shrift to the presumption of openness and send the wrong signal to lower courts and the public.

iv.   Application

In Tennessee, a trial court's decision to seal its own records or close its proceedings is generally reviewed for an abuse of discretion. *See Ballard*, 924 S.W.2d at 659 (citing *Loveall v. Am. Honda Motor Co.*, 694 S.W.2d 937, 939 (Tenn. 1985)). *Nashville Banner* urges us to apply a less deferential version of the abuse of discretion standard that the Sixth Circuit employs. Appellant Br. at 38. The Sixth Circuit reviews sealing decisions for an

---

[8] Notably, *Ballard* addressed the modification of a protective order limiting access to discovery materials under Tennessee Rule of Civil Procedure 26.03, not judicial records protected by the First Amendment. 924 S.W.2d at 658–61.

abuse of discretion but without "the deference that standard normally brings." *Doe by Doe v. Brentwood Acad. Inc.*, 578 S.W.3d 50, 53 (Tenn. Ct. App. 2018) (quoting *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 306 (6th Cir. 2016)). We decline to modify our standard of review as requested by *Nashville Banner*. Because there was no written order filed that sealed these documents, this Court cannot apply any abuse of discretion standard. Where a trial court "seals" judicial records without a written order, that attempt has no effect because no compelling interest has been articulated to justify the seal. *See Drake*, 701 S.W.2d at 607–08; *In re NHC*, 293 S.W.2d at 560. Unless and until a written order is filed, clerks' offices should not seal documents that are filed with the court.[9] Accordingly, the subsequent orders addressing the request to unseal were procedurally inapposite because the documents were never properly sealed. *See Drake*, 701 S.W.2d at 607–08; *In re NHC*, 293 S.W.2d at 560.

As in other situations when a trial court fails to articulate its reasoning on the record, the reviewing court may remand the case for additional findings. *See Am. Heritage Apartments, Inc. v. Hamilton Cnty. Water & Wastewater Treatment Auth.*, 494 S.W.3d 31, 51–52 (Tenn. 2016). This is because sealing involves "a finding of fact, which the trial court is in the best position to make." *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003). However, if the record is sufficiently developed to permit meaningful review of the sealing issue on the merits, the court may also conduct a de novo review in the interest of judicial economy. *See Bean v. Bailey*, 280 S.W.3d 798, 805 (Tenn. 2009) (citing *Alley v. State*, 882 S.W.2d 810, 823 (Tenn. Crim. App. 1994)); *see also State v. Dagnan*, 641 S.W.3d 751, 758–59 (Tenn. 2022); *Lovlace v. Copley*, 418 S.W.3d 1, 36 (Tenn. 2013). When considering the record, "[t]he determination as to whether the appellate court should conduct a de novo review or remand for reconsideration is within the discretion of the reviewing court." *State v. King*, 432 S.W.3d 316, 328 (Tenn. 2014).

We find the instant record is sufficient to permit our de novo review. *See King*, 432 S.W.3d at 328; *Bean*, 280 S.W.3d at 805 (citing *Alley*, 882 S.W.2d at 823). We have carefully reviewed the three sealed documents and discern no compelling interest that would overcome the presumption of openness for judicial records. *See Drake*, 701 S.W.2d at 608 (quoting *Waller*, 467 U.S. at 45). Accordingly, we vacate the decision that these documents remain sealed and remand with instructions that these documents be unsealed.

---

[9] Further, technology or processes that automatically remove cases or records from public facing dockets should be eliminated. Except as might be required by statute, sealed cases and records should still appear listed on the public facing docket with properly anonymized titles. *See, e.g.*, Wash. Gen. R. 15(4) ("The existence of a court file sealed in its entirety, unless protected by statute, is available for viewing by the public on court indices. The information on the court indices is limited to the case number, names of the parties, the notation 'case sealed,' the case type and cause of action in civil cases and the cause of action or charge in criminal cases . . . . The order to seal and written findings supporting the order to seal shall also remain accessible to the public, unless protected by statute.").

We do not dispose of this case by reaching an issue that was not meaningfully addressed by the parties. Instead, we overturn the trial court's decision after conducting a de novo review on the merits and applying the correct legal standard.

The dissent agrees that the documents in this case should be unsealed but would reach that conclusion by applying the good-cause standard. Yet the dissent does not explain how the trial court's detailed and thorough findings on all but one of the *Ballard* factors were insufficient to satisfy that less stringent standard. That approach would sow more confusion than our adoption of the compelling interest standard.

The dissent both bemoans the overreach of our holding while also chiding our decision to not address additional matters beyond this case, namely a comprehensive definition of "judicial records" protected by the First Amendment. To their credit, we agree that there is tension and opacity in this area of law. We admit too that more questions have been created today than answered. But critically, the questions we leave unanswered are those we have not been asked to answer. *See Williams v. Smyrna Residential, LLC*, 685 S.W.3d 718, 730 (Tenn. 2024) ("To the extent we are leaving questions unanswered, that is because we may only decide the questions that are presented by this case."). Without vigorous debate, we decline to define the precise contours of what constitutes a "judicial record" protected by the First Amendment. In time, these questions will be resolved after appropriate consideration and argument in our lower courts.

## III. CONCLUSION

We reverse the order of the Court of Criminal Appeals dismissing the appeal of *Nashville Banner*. From our own review, there is no compelling interest that necessitates sealing these three documents. This matter shall be remanded to the trial court with instructions to make the documents available for public inspection.

MARY L. WAGNER, JUSTICE